IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| CLIFTON REESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-05053-CV-RK |
| | ) | |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are (1) Defendant Tyson Foods, Inc.'s motion to dismiss (Doc. 5), (2) Plaintiff Clifton Reese's amended motion for leave to file amended pleading and substitute party (Doc. 15), and (3) Defendant's motion for temporary stay and stay of discovery (Doc. 35). The motion to dismiss and the motion for leave to file amended pleading and substitute party are fully briefed. (Docs. 6, 10, 14, 18, 23.) For the reasons below, the motion to dismiss is **GRANTED in part and DENIED in part,** the motion for leave to file amended pleading and substitute party is **GRANTED in part and DENIED in part,** and the motion for temporary stay and stay of discovery is **DENIED as MOOT.**

### Background

This lawsuit stems from Defendant's vaccination policy mandating that employees be vaccinated against the COVID-19 virus, with certain accommodations available. The essence of Plaintiff's position is that he was forced out of his job because he refused to be vaccinated against the COVID-19 virus for religious reasons.

Plaintiff filed his petition against Tyson Foods, Inc. in the Circuit Court of Barry County, Missouri, on June 16, 2022. (Doc. 1-1 at 7-46.) The petition consists of three counts, claiming Defendant violated the Missouri Human Rights Act ("MHRA") by religious discrimination (Count I), violated public policy because the vaccination policy did not allow for the completion of the Missouri Commission on Human Rights ("MCHR") investigation in time to prevent Defendant's religious discrimination against Plaintiff and the backfilling of his position (Count II), and invaded Plaintiff's privacy by sharing to unauthorized persons Plaintiff's private and confidential medical information regarding the COVID-19 vaccination (Count III).

Defendant removed the case on July 22, 2022, based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1.) On July 29, 2022, Defendant filed a motion to dismiss Plaintiff's petition under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 5.)

Plaintiff filed his response to Defendant's motion to dismiss and a motion for leave to file amended pleading and substitute party on August 13, 2022. (Docs. 10, 11.) Because the motion for leave to file amended pleading and substitute party was filed only fifteen days after Defendant filed its Rule 12(b)(6) motion to dismiss and was not accompanied by any proposed amended pleading, on August 15, 2022, the Court denied Plaintiff's motion without prejudice, noting:

> A party is entitled to amend its pleading as a matter of course without leave of the Court within twenty-one days after service of a motion otherwise filed under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). Moreover, even if Plaintiff could not amend the complaint as a matter of course, Local Rule 15.1(a)(2) requires the party filing a motion to amend to attach the proposed amended pleading to the motion to amend.

(Doc. 13.)

Rather than filing an amended complaint as a matter of course on or before August 19, 2022 (21 days after Defendant filed its motion to dismiss), Plaintiff waited until September 8, 2022, to file an amended motion for leave to file amended pleading and substitute party, pursuant to Fed. R. Civ. P. 12, 15, and 19, requesting to substitute as defendant Tyson Poultry, Inc. (Doc. 15.)

Additional facts are set forth as necessary.

## Legal Standards

### I. Dismissal 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss a party's claims for "failure to state a claim upon which relief can be granted[.]" To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Plaintiff's obligation requires a pleading to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 554. A complaint "must contain either direct or

inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (internal quotation marks omitted)

## II. Leave to Amend

Generally, a district court should freely give leave to a party to amend its pleadings when justice so requires. Fed. R. Civ. P. 15(a). However, the Court may properly deny a party's motion to amend its complaint for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Delay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing amendment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987)). "The burden of proof of prejudice is on the party opposing amendment." *Sanders*, 823 F.2d at 217.

In addition, "[f]utility constitutes a valid reason for denial of a motion to amend." *Ryan v. Ryan*, 889 F.3d 499, 508 (8th Cir. 2018) (quotation omitted). "When evaluating futility, courts determine whether the proposed amended complaint is duplicative, frivolous, or could survive a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Dicken v. Nw. Eye Ctr., P.A.*, No. 13-CV-2691 (JNE/KMM), 2017 WL 2345579, at *1 (D. Minn. May 30, 2017) (citing *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719-20 (8th Cir. 2014)).

## Discussion

Because the only material difference between Plaintiff's petition (Doc. 1-1) and proposed amended petition (Doc. 15-1) is the addition of "Tyson Poultry, Inc. and/or" to the caption and the first reference to Defendant(s), the Court analyzes whether the proposed amended petition could survive a motion to dismiss for failure to state a claim under Rule 12(b)(6).

## I. Right to Sue

Defendant argues that Plaintiff obtained a right to sue from the MCHR with respect to Tyson Poultry, Inc. and not Defendant, Tyson Foods, Inc., and because Counts I and II (religious

3

discrimination and "violation of public policy") are governed by the MHRA, Plaintiff cannot sue Defendant Tyson Foods, Inc.

Plaintiff filed a Charge of Discrimination with the MCHR on September 26, 2021, naming Tyson Foods, Inc. as his employer. On December 15, 2021, the investigator with the MCHR emailed Plaintiff that the correct legal name of Plaintiff's employer was Tyson Poultry, Inc., and that he should sign and return to the investigator an amended Charge of Discrimination in which the only change was to the employer's name. Accordingly, Plaintiff filed such amended Charge of Discrimination on December 18, 2021, naming Tyson Poultry, Inc. as his employer. The MCHR issued Plaintiff a Notice of Right to Sue dated April 1, 2022, which was captioned "Clifton Reese v. TYSON POULTRY, INC." and stated, "You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court." A Notice of Right to Sue dated April 5, 2022, was issued to Plaintiff by the United States Equal Employment Opportunity Commission ("EEOC"). However, Plaintiff subsequently filed his petition against Defendant Tyson Foods, Inc. in the Circuit Court of Barry County, Missouri, on June 16, 2022, after which Defendant removed the case to this Court.

Plaintiff argues he should be granted leave to amend his pleadings to substitute Tyson Poultry, Inc. as a defendant because (1) all the documents employer provided to Plaintiff only list the employer as "Tyson" and because "all of the entities appear to be part of the same corporation family for the Defendant"; (2) Plaintiff may not be able to get relief on his claims, could be prejudiced in seeking his claimed relief, and has no other adequate remedy to address his claims; and (3) Defendant will not be prejudiced by the amended pleading. Defendant argues it has been and will be prejudiced by Plaintiff's delay in forcing the parties to engage in additional and unnecessary motion practice, the proposed amended petition does not cure deficiencies raised in Defendant's motion to dismiss, and Plaintiff's attempt to substitute Tyson Poultry, Inc. is untimely.

The Court finds that Plaintiff would be unable to get relief if leave to amend is denied and Defendant would suffer no undue prejudice were leave to amend granted. Discovery is in its early stages and granting leave to amend as Plaintiff has requested will not unduly delay this litigation. Plaintiff's claims against Tyson Poultry, Inc. relate back to the filing of his initial petition because (1) Plaintiff's claims against Tyson Poultry, Inc. are transactionally related to the original petition; (2) Tyson Poultry, Inc. had notice of the action within 120 days such that it is not prejudiced in maintaining a defense; and (3) Tyson Poultry, Inc. is aware that it would have been named

originally but for a "mistake" as to its identity. Fed. R. Civ. P. 15(c)(3). Plaintiff brings identical claims in his proposed amended petition against Tyson Poultry, Inc., the correct defendant, illustrating both the transactional relatedness of the clams and the "mistake" as to the identity of the proper defendant. Tyson Poultry, Inc. had notice of the action as shown by its being named in the amended Charge of Discrimination.

The Court finds it should freely give leave to Plaintiff to amend its pleadings to substitute Tyson Poultry, Inc. as Defendant. The Court finds no undue delay, bad faith or dilatory motive on the part of the movant, no repeated failure to cure deficiencies by amendments previously allowed, and no undue prejudice to the opposing party by virtue of allowance of the amendment. Thus, Plaintiff's motion for leave to amend as to substituting Tyson Poultry, Inc., as defendant is granted and Defendant's motion to dismiss on this ground is denied as moot.

## II. Failure to State a Claim

Defendant further argues that Plaintiff's Count I, religious discrimination in violation of the MHRA, and Count II, violation of public policy, fail to state a claim.

Defendant argues specifically that Plaintiff's allegations as to religious discrimination are threadbare, failing to allege how his Christian faith conflicts with the vaccination requirement, how or whether his faith conflicts with the use of medicines or treatment in which fetal cell lines played a role in development, and that he suffered disciplinary action of any sort for not complying with the vaccine requirement, instead boiling down to a disagreement with the reasonable accommodations Defendant offered.

In Count I, Plaintiff claims Defendant violated the Missouri Human Rights Act (MHRA), § 213.010 et seq., RSMo., by religious discrimination. The MHRA makes it

> an unlawful employment practice: (1) For an employer, because of the . . . religion . . . of any individual: (a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]

§ 213.055, RSMo. A religious discrimination claim under the MHRA requires a plaintiff to show: (1) plaintiff suffered an adverse employment action, (2) plaintiff's religion was a contributing factor in that adverse employment action, and (3) plaintiff suffered damage as a direct result of that adverse employment action. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. banc 2007) (*abrogated on other grounds by* section 213.101.4, RSMo Supp. 2018).

5

"In deciding a case under the MHRA, [] courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." *Daugherty*, 231 S.W.3d at 818. A religious discrimination plaintiff must plead "(1) [Plaintiff] has a bona fide belief that compliance with an employment requirement is contrary to [his or] her religious faith, (2) [Plaintiff] informed [his or] her employer about the conflict, and (3) [Plaintiff] was disciplined because of [his or] her refusal to comply with the employment requirement." *Mann v. Frank*, 795 F. Supp. 1438, 1449 (W.D. Mo. 1992) (citing *Johnson v. Angelica Uniform Grp., Inc.,* 762 F.2d 671, 673 (8th Cir. 1985); *Brown v. Gen. Motors Corp.,* 601 F.2d 956, 959 (8th Cir. 1979)), *aff'd,* 7 F.3d 1365 (8th Cir. 1993).

Plaintiff's petition plausibly pleads that Plaintiff has a bona fide belief that compliance with Tyson's vaccine mandate is contrary to his religious faith. His allegations on this issue include the following:

> 10. Plaintiff has declined to receive the mandatory vaccination for religious reasons. His religious exemption was granted by Defendant.
>
> . . . .
>
> 32. Plaintiff . . . stated he had several religious concerns about the Covid vaccination. He filed for religious exemption on September 3, 2021.
>
> . . . .
>
> 45. Plaintiff has been a model Christian employee for the Defendant. He regularly practices his faith. Defendant did not question Plaintiff's religious faith or exemption as not being [*sic*] his sincere religious belief.
>
> . . . .
>
> 47. Plaintiff has performed his employment control duties except for the COVID vaccine, which he declared [*sic*] to religious belief and filing valid legal religious exemption.
>
> . . . .
>
> 51. . . . . [The COVID-19 vaccine] offends the conscience of millions of Americans' deeply held spiritual beliefs and religious faith due to the use of aborted fetal cells in its testing, development and production of each of these experimental vaccines.
>
> . . . .
>
> 131. Tyson offered those who applied for [a religious] accommodation up to one year of unpaid leave of absence or until they received the vaccine. . . . There [*sic*] were informed that after one year they would be effectively terminated from their position at Tyson. Tyson employees were also informed that even if they did receive the vaccine their positions would not be guaranteed.

6

132. In response to Plaintiff's religious accommodation request, his superiors told him that the request had been accepted.

. . . .

135. Presently, all COVID-19 vaccines [that] have been made use either in production or testing of [*sic*] fetal cell lines developed from tissues originally derived from aborted fetuses[.]

. . . .

139. . . . . Plaintiff objects to receiving the COVID-19 vaccines on the basis that, even assuming the vaccines do confer a meaningful health benefit, that benefit is one from ill-gotten gains.

140. Plaintiff believes any benefit the COVID-19 vaccines may confer, flows from the unjust exploitation of unborn human life. On this basis alone, Plaintiff refuses on religious grounds to accept or be forced to accept the COVID-19 vaccines.

. . . .

161. Plaintiff has sought an exemption from Tyson's COVID-19 vaccine mandate on religious grounds.

. . . .

163. Tyson was made aware of the conflict between its COVID-19 vaccine mandate on the one hand, and Plaintiff's religious beliefs on the other. Tyson responded by implementing an accommodation tantamount to disciplinary action by discharge against Plaintiff.

164. . . . [E]mployees [refusing to comply with Tyson's vaccine mandate] will be forced to seek alternative employment during the year and those that refuse the vaccination on religious grounds are unlikely to comply with the mandate within the year, and thus will ultimately be terminated. Furthermore, Plaintiff's position is not guaranteed upon his return.

168. . . . . [T]he only accommodation provided by Tyson for a religious exemption is one year of unpaid leave[.]

(Doc. 15-1.)

Accepting as true the factual allegations contained in Plaintiff's petition and granting him the benefit of all reasonable inferences that can be drawn from those allegations, *see Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010), the Court finds that the facts alleged in Plaintiff's petition plausibly plead a connection between Plaintiff's religion and a conflict with Tyson's

vaccine mandate sufficient to satisfy the threshold for his religious discrimination claim to survive Defendant's motion to dismiss.

Because the Court finds that the facts alleged in Plaintiff's petition plausibly plead a connection between Plaintiff's religion and a conflict with Tyson's vaccine mandate sufficient to satisfy the threshold for his religious discrimination claim to survive Defendant's motion to dismiss, Plaintiff's Count I does not fail to state a claim and his proposed amended petition is not futile as to Count I. Defendant's motion to dismiss Count I is denied and Plaintiff's motion for leave to amend as to Count I is granted.

In Count II, Plaintiff claims Defendant violated public policy because the vaccination policy did not allow for the completion of the MCHR investigation in time to prevent Defendant's religious discrimination against Plaintiff and the backfilling of his position. No cause of action for violation of public policy exists under Missouri or federal law. To the extent Plaintiff's Count II claim is premised on Plaintiff's MHRA claim, it must be brought under the provisions of that statutory chapter. *See* Mo. Rev. Stat. § 213.070.2. Plaintiff does not plead this claim pursuant to any provision of the MHRA. Plaintiff's violation of public policy claim fails to state a claim for which relief may be granted.[1] Accordingly, Defendant's motion to dismiss is granted as to Plaintiff's Count II.[2]

### III. Invasion of Privacy Preempted by MHRA

Finally, Defendant contends that Plaintiff's Count III invasion of privacy claim is preempted by the MHRA pursuant to § 213.070.2. The Court agrees. Plaintiff's proposed amended petition makes clear that each of his claims arises out of his employment relationship with Defendant. (Doc. 15-1 at 31-39.) The MHRA provides that, in addition to two chapters not relevant here, the MHRA "shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." Mo. Rev. Stat. § 213.070.2. "In other words, in Missouri, damages arising from the employment relationship cannot be redressed except through the specified statutes." *Huskey v. Petsmart, Inc.*, No. 18-00813-CV-W-NKL, 2019 WL 122873, at *2 (W.D. Mo. Jan. 7, 2019).

---

[1] Defendant characterizes Plaintiff's violation of public policy claim in Count II as retaliation, to the extent it can be liberally interpreted as such. Defendant then argues that as to any such retaliation claim, Plaintiff has failed to exhaust his administrative remedies.

[2] Plaintiff's motion for leave to file amended petition is denied as to Plaintiff's Count II on the basis of futility.

"[W]hether the exclusive-remedy provision applies turns . . . on whether [Plaintiff's] alleged 'injury or damages' arise from an 'employment relationship.'" *Huskey*, 2019 WL 122873, at *2 (quoting Mo. Rev. Stat. § 213.070.2). Key to this case, Count III alleges that Tyson disclosed Plaintiff's "private and confidential medical information regarding the COVID vaccination." (Doc. 15-1 at ¶ 181.) This claim concerns conduct allegedly perpetrated by Plaintiff's employer, and Plaintiff seeks nonspecific "damages" caused by such conduct. Counts I, II, and III "all arise from the same factual allegations underlying Plaintiff's MHRA claim[]. Accordingly, Plaintiff cannot maintain his common-law claim[]." *Winfrey v. Ford Motor Co.*, No. 4:19-CV-00889-DGK, 2020 WL 1558117, at *2 (W.D. Mo. Apr. 1, 2020), *aff'd*, 842 F. App'x 5 (8th Cir. 2021).

The Court therefore finds Plaintiff's invasion of privacy claim in Count III is preempted by the MHRA because of the exclusivity provision of § 213.070.2. Therefore, Defendant's motion to dismiss is granted as to Plaintiff's Count III.[3]

### Conclusion

For the reasons above, the Court **ORDERS** as follows:

(1) Defendant's motion to dismiss is **GRANTED** as to Plaintiff's Counts II and III and **DENIED** as to Plaintiff's Count I.

(2) Plaintiff's motion for leave to file amended pleading and substitute parties is **GRANTED** as to Plaintiff's Count I allowing substitution of Defendant, and **DENIED** as to Plaintiff's Counts II and III.

(3) Defendant's motion for temporary stay and stay of discovery pending rulings is **DENIED as MOOT.**

(4) Plaintiff shall file his amended complaint substituting Tyson Poultry, Inc., as defendant and including only Count I on or before February 10, 2023.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: February 7, 2023

---

[3] Plaintiff's motion to amend is denied as to Plaintiff's Count III on the basis of futility.